UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

*(Filed Electronically)*

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:23-CR-52-DJH |
| | ) |
| RAYSHAWN LEE | ) |
| | ) |
| Defendant. | ) |

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

## SENTENCING MEMORANDUM ON BEHALF OF RAYSHAWN LEE

**COMES** the Defendant, Rayshawn Lee, by and through counsel, and hereby files with this Honorable Court, the following Sentencing Memorandum, setting forth the pertinent factors which the Defendant believes this Court should consider in determining what length of sentence is "sufficient, but not greater than necessary," to satisfy the goals of federal sentencing.

## FACTUAL BACKGROUND

Defendant Rayshawn Lee (hereinafter "Mr. Lee") was charged by Indictment on May 2, 2023 in the Western District of Kentucky. The indictment alleged in Count 2 that Mr. Lee:

> knowingly possessed, in and affecting commerce, a firearm, that is, a Kel-Tec, Model PF-(, nine-millimeter pistol, bearing serial number SKD36, with knowledge that he had previously been convicted in a court of a crime punishable by imprisonment for a term exceeding one year...

On August 23, 2023, a negotiated plea agreement between the parties, in which Mr. Lee agreed to plead guilty to Count 2 of the Indictment, was accepted by this Court. The Court found that the plea agreement was consensually signed by Mr. Lee and that he understood the rights that

1

he was waiving by pleading guilty. After accepting the guilty plea, the Court set a sentencing date for December 19, 2023. The parties were then instructed that they would be permitted to submit memorandums as evidence in support of their position as to the appropriate sentence that should be imposed on the Defendant.

## APPLICABLE LAW

The Sentencing Reform Act of 1984 was enacted by Congress in response to widespread sentencing disparity that existed in the federal sentencing system. Title II, Comprehensive Crime Control Act of 1984, Pub. L. No. 98–473, 98 Stat. 1837 (1984). Congress' goal was to provide federal sentencing judges with the "flexibility to consider which of the core sentencing principles – retribution, deterrence, incapacitation, and rehabilitation – are the most important in a particular case, and to provide alternatives to incarceration where necessary in carrying out statutory goals." United States v. K, 160 F.Supp.29 421 (2001) citing 18 U.S.C. §3553(a)(3).

However, availing the judiciary with such discretion quickly led to the perception that federal judges were handing out, "an unjustifiably wide range of sentences to offenders with similar histories, convicted of similar crimes, committed under similar circumstances." S.Rep. No. 98-225, p. 38 (1983). In attempt to provide structure to this unfettered discretion, the United States Sentencing Commission ( "USSC") was created in order to develop such a set of guidelines which would, "specify an appropriate [sentencing range] for each class of convicted persons." Guidelines Manual, United States Sentencing Commission, ch. 1, pt. A, p. 1 (Nov.1995) (1995 U.S.S.G.). These Guideline ranges, enacted on November 1, 1987, created a mandatory sentencing guideline system which required federal judges to impose sentences within the applicable guideline range, unless the court found the existence of an aggravating or mitigating circumstance not adequately

taken into consideration by the Commission in formulating the sentencing guidelines. 18 U.S.C. §3553(b)(1), excised by United States v. Booker, 543 U.S. 220 (2005).

In 2005 though this mandatory system came to a halt when the Supreme Court in United States v. Booker, 524 U.S. 956 (2004) determined that a mandatory application of the Federal Sentencing Guidelines violated the right to trial by jury under the Sixth Amendment. The Court remedied this Sixth Amendment violation by excising the provisions in the Sentencing Reform Act that made the federal sentencing guidelines mandatory, thereby converting the mandatory system that had existed for almost 20 years into an advisory one. 543 U.S. 220 (2005). The Court in Booker stated:

> We answer the question of remedy by finding the provision of the federal sentencing statute that makes the Guidelines mandatory, 18 U.S.C.A. § 3553(b)(1) (Supp.2004), incompatible with today's constitutional holding. We conclude that this provision must be severed and excised, as must one other statutory section, § 3742(e) (main ed. and Supp.2004), which depends upon the Guidelines' mandatory nature. So modified, the Federal Sentencing Act, see Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 et seq., 28 U.S.C. § 991 et seq., makes the Guidelines effectively advisory. It requires a sentencing court to consider Guidelines ranges, see 18 U.S.C.A. § 3553(a)(4) (Supp.2004), but it permits the court to tailor the sentence in light of other statutory concerns as well, see § 3553(a) (Supp. 2004). Id. at 245.

By severing these provisions, the Court recognized that Congress expected the guideline system to be mandatory, however, it reasoned that Congress would prefer a system in which the guidelines were considered in every case. Id. at 248. Booker thus instructed the courts to consider the Guidelines, but "tailor the sentence in light of other statutory concerns." Id. at 245.

The Court followed Booker closely after in Gall v. United States holding that sentencing courts must now follow the three-step process in sentencing a defendant who is before them. 552 U.S. 38 (2007). First, the court must properly determine the Guideline range. Id.; 18 U.S.C. §

3

3553(a)(4). Second, the court must determine whether to apply any of the guidelines' departure policy statements to adjust the guideline range. Id.; 18 U.S.C. § 3553(a)(5). Third, the court must consider all the factors set forth in 18 U.S.C. § 3553(a) as a whole, including whether a variance is warranted. §1B1.1(c); see also United States v. Stone, 432 F.3d 651, 655 (6th Cir. 2005).

## ARGUMENT

Based on the Court's duties and abilities promulgated to it under the Act, the Guidelines, and relevant caselaw, the task of imposing an appropriate sentence in this case may be correctly accomplished by first determining the applicable Sentencing Guideline range for Mr. Lee. Next the court must determine whether to apply any of the Guidelines' departure policy statements to adjust this guideline range. Lastly, the Court must then decide whether any of the factors listed in 18 U.S.C. § 3553(a) warrant the imposition of a "variance" that could result in a nonguideline sentence. See Booker, 543 at 264-65; USSG § 1B1.1, comment.

### I.   THE APPLICABLE SENTENCING GUIDELINE RANGE FOR MR. LEE

United States Probation Officer Catherine Brun (hereinafter "Officer Brun"), of the United States Office of Probation and Parole has determined in her Presentence Investigation Report ("PSI"), filed October 16, 2023, that Mr. Lee scores a "Total Offense Level" of 17. She also concluded that his "Criminal History" score was a 12, making him a Category V.

#### a.   OBJECTIONS TO THE PSR

Mr. Lee would object to the Criminal History Score of 12 for two different reasons.

First, Officer Brun awarded Mr. Lee six (6) points in his criminal history score under §4A1.1(c), however this section limits the number of one (1) point offenses to four (4) total points. Officer Brun awarded one (1) point for each of the following convictions:

- Paragraph 35: 2015 conviction for possession of marijuana

4

- Paragraph 36: 2019 conviction for attempted possession of a controlled substance

- Paragraph 37: 2016 conviction for Assault 4th degree

- Paragraph 38: 2017 conviction for unauthorized use of a motor vehicle

- Paragraph 41: 2019 conviction for violation of Kentucky EPO/DVO

- Paragraph 42: 2021 conviction for assault 4th degree and criminal trespassing 1st degree

As such, Mr. Lee would contend that the two (2) points added in paragraphs 41 and 42 should be removed from his Criminal History score.

Next, paragraph 46 of the PSR awarded Mr. Lee two (2) points for committing this offense while under a criminal justice sentence, however, according to the 2023 updated Guidelines, §4A1.1(e) only adds one (1) point for defendants who already have seven (7) or more points under subsections (a) through (d) and are under a criminal justice sentence.

Mr. Lee would assert that, after three (3) points are removed from his Criminal History score, he would only have nine (9) total points, making him a **Category IV** Criminal History score. When the two correct scores are combined, the Guidelines indicate that **Mr. Lee falls within the Guideline range of a recommended thirty-seven (37) to forty-six (46) month sentence**.

The Sixth Circuit and the Supreme Court in Rita v. United States have held that a sentence within the properly calculated guideline range is presumptively reasonable. 551 U.S. 338 (2007). Thus, it would not be improper or unordinary for this Court to impose on Mr. Lee a sentence that falls within his Guideline range. However, as the Court in Booker has ordered, this Court must also first give due consideration to the any available departures and the factors of 18 U.S.C. § 3553(a) before imposing a sentence. The court reaffirmed this position in Gall v. United States, stating, "…the Guidelines should be the starting point and initial benchmark" at sentencing. 552

U.S. 38 (2007). Therefore, the court may not presume that a Guidelines sentence is reasonable until there is at least full consideration of these individualized facts regarding the defendant and his or her circumstances. Mr. Lee will argue below that these factors, when evaluated within his case, merit a nonguideline sentence below the minimum proscribed by the Guidelines.

### II. WHETHER TO APPLY ANY OF THE GUIDELINES' DEPARTURE POLICY STATEMENTS TO ADJUST THE GUIDELINE RANGE

As Congress acknowledged in the Sentencing Reform Act, and explicitly stated in The Guidelines Manual itself, "it is difficult to prescribe a single set of guidelines that encompasses the broad range of human conduct potentially relevant to a sentencing decision. USSG, Ch. 1 Pt. A(1)(4)(b); §5K2.0 comment. (backg'd); 18 U.S.C. § 3553(b). Departures, therefore, perform an integral function in the sentencing guideline system and help provide courts with a way to impose an appropriate sentence in exceptional circumstances. However, The Guidelines Manual cautions they should apply only in the "atypical" case lying outside the "heartland" of conduct covered by the guidelines. Id. at Ch. 1 Pt. A(1)(4)(b).

#### a. MR. LEE IS ENTITLED TO A DEPARTURE FROM HIS CRIMINAL HISTORY CATEGORY

Under USSG §4A1.3(b)(1), "[i]f reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." Additionally, Application Note 3(ii) of §4A1.3(b)(1) finds that a departure from the defendant's criminal history category may be warranted if "[t]he defendant received criminal history points from a sentence for possession of marijuana for personal use, without an intent to sell or distribute it to another person. Paragraph 35 of Mr. Lee's PSR indicates that Officer Brun gave Mr. Lee one criminal history point for his 2015 conviction for possession of marijuana. As

such, Mr. Lee asks this Court to find that he is entitled to a departure, which would reduce his criminal history score to eight (8), which would still place him in **Category IV** for his Criminal History score, but nonetheless should be of importance to this Court's sentencing decision.

### III. WHETHER A CONSIDERATION OF THE FACTORS LISTED IN 18 U.S.C. § 3553(a) WARRANT IMPOSITION OF A DOWNWARD VARIANCE AND/OR A NONGUIDELINE SENTENCE

While a court is required to give "respectful consideration" to the sentence recommended by the Guidelines, judges are ultimately permitted to tailor sentences in light of other statutory concerns as well. *See* Peugh v. U.S., 133 S. Ct. 2072 (2013). In opening her opinion in Kimbrough v. United States, Justice Ginsburg stated, "the Guidelines, formerly mandatory, now serve as one factor among several courts must consider in determining an appropriate sentence." 128 S. Ct. 558 (2007). The Court emphasized that "[t]he district judge... must make an individualized assessment based on the facts presented." Id., at 49-50. See also U.S. v. Singh, 877 F3d 107, 116 (2nd Cir. 2017) (the court must then "make an independent sentencing determination, taking into account the 'nature and circumstances of the offense and the history and characteristics of the defendant', and all the statutory factors."). Further, when evaluating these factors, "[t]he weight to be accorded to any given §3553(a) factor is a matter committed to the sound discretion of the district court." United States v. Clay, 483 F.3d 739, 743 (11th Cir.2007).

In Gall, the Court emphasized that sentencing judges do not need extraordinary reasons to impose a sentence on a defendant that is outside the Guidelines' range. 128 S. Ct. 586 (2007) (Upon entering a guilty plea, the government recommended the guideline range of between 30-37 months. His attorney's presentation of Gall's compelling individual story led the judge to sentence him to 36 months of probation. The Supreme Court upheld the sentence even though Gall's situation did not present "extraordinary circumstances."). Statistical data supports that federal

judges across all circuits are often finding that these factors sustain valid reasons to grant defendants variances from their Sentencing Guideline range. In fact, in Fiscal Year 2022, judges granted 29.8% of Defendants a sentence reduction through a downward variance and 4.6% of Defendants through a downward departure. U.S.S.G., <u>Sourcebook of Federal Sentencing Statistics, Appendix B</u>. Last accessed via *https://www. ussc.gov/research/sourcebook-2022* on January 25, 2024. These numbers are not far below the data for the Western District of Kentucky for the same fiscal year, where judges granted 30.8% of Defendants a sentence reduction through a downward variance and 6.8% of Defendants through a downward departure. <u>Id</u>. Thus, Mr. Lee prays this Court take into consideration his circumstances, as they relate to the factors listed in 18 U.S.C. § 3553(a) and grant him one or more variances from his Guideline sentence. Namely Mr. Lee requests that this Court consider the following:

    a. **<u>18 U.S.C. §3553(a)(1): THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT</u>**

        i. HISTORY AND CHARACTERISTICS OF THE DEFENDANT

Mr. Lee's personal history should be of importance to this Court in its consideration of an appropriate sentence. Mr. Lee's history is one that, unfortunately, is all too familiar for many sentencing courts to come across; drugs, prison, and abuse. As a child, Mr. Lee was raised by his paternal grandmother, due to his parents' inability to care for him. Both his mother and father suffered from drug addiction and spent time in prison during his childhood. He saw his mother frequently growing up as she lived nearby, but never lived with her. It was during this time that Mr. Lee first came to the recognition of his mental health struggles at a young age. At the tender age of seven (7), Mr. Lee began smoking marijuana. He participated in therapy at Seven Counties in Louisville, Kentucky where he was diagnosed with depression as early as elementary school.

His grandmother did her best to care for Mr. Lee, but unfortunately, their time together was cut short after her death in 2000. At the age of thirteen (13), Mr. Lee lost his primary caregiver and the one person who provided stability in his life.

He recalls his life changing for the worse after his grandmother's passing, as Mr. Lee was forced to live with his father, where he experienced emotional abuse. After less than one year with him, Mr. Lee vividly remembers his father pitting himself against Mr. Lee's mother and requiring Mr. Lee to choose which parent he wished to show "allegiance" to. When Mr. Lee chose his mother, his father became angered and reacted by abandoning him with Mr. Lee's paternal half-brother's mother. During this time, in 2001, Mr. Lee's mother also passed away. While living with his half-brother Dwight's mother, Mr. Lee experienced emotional abuse by her, as well as physical abuse by one of her foster sons. He attended Buechel Metropolitan High School where he was placed in Behavioral Disorder Classes but dropped out in 9th grade. After dealing with this abuse for two years, at the age of sixteen (16), Mr. Lee exercised what he believed to be his best option and ran away from the home. After that, he spent the next two years living with various friends in whatever space they had available for him.

Mr. Lee believes that his history of parental incarceration, lack of love, and loss played a substantial role in the mental health issues and criminal conduct that he has experienced as an adult. This presumption is supported by a significant amount of research as well. The family unit is the primary source of attachment, nurturing, and socialization for children, meaning substance use disorders by a parent can uniquely affect the child in ways including, but not limited to, having unmet developmental needs, impaired attachment, economic hardship, legal problems, and emotional distress. For children there is also an increased risk of developing a disorder themselves. See Zimic JI, <u>Jakic V. Familial risk factors favoring drug addiction onset</u>. Journal of Psychoactive

Drugs. 2012;44(2):173–185. Additionally, children in families of parents with co-occurring substance use disorders and psychopathology were at even greater risk for emotional, behavioral, and social problems than their peers in families whose parents only had a substance use disorder. See Hussong AM, Cai L, Curran PJ, Flora DB, Chassin LA, Zucker RA. <u>Disaggregating the distal, proximal, and time-varying effects of parent alcoholism on children's internalizing symptoms</u>. J. Abnorm. Child Psychol. 2008;36(3):335–46.

Despite his upbringing, Mr. Lee has tried to make strides to become a productive member of society as an adult. Mr. Lee was employed full-time doing lawn care services, even during the period of time in which he was under Home Incarceration supervision while this case was in state Court. He took full advantage of that opportunity to learn as much as he could about the lawn care business, and he hopes to be able to start his own lawn care business upon his release from prison. He believes that this would provide him with sufficient means to care for his family.

Mr. Lee is also the father of four (4) children, whom he has always tried his best to support physically, financially, and emotionally. Prior to his arrest in the instant offense, he cared for his two youngest children, age three (3) and four (4), on a daily basis. Mr. Lee has repeatedly expressed how his incarceration for this offense has been particularly difficult for Mr. Lee due to his inability to see his children regularly. He believes that this separation has been a motivator for him to work his hardest to lead a life as a productive citizen whenever he is released from this term of incarceration.

Mr. Lee unfortunately possesses a history that leads many like him into the criminal justice system. Yet his awareness of these issues and desire to work to overcome them should signify to the Court a Defendant whose characteristics warrant a sentence reduction below the recommended guideline sentence.

### ii.   NATURE AND CIRCUMSTANCES OF THE OFFENSE

In addition to "the history and characteristics of the defendant," the Court must also consider "the nature and circumstances of the offense." 18 U.S.C. § 3553(a)(1). A review of the facts described in "The Offense Conduct" section of the PSI (paragraphs 10-14) gives a number of reasons that a below guideline sentence is appropriate in this case, namely Mr. Lee's limited conduct and acceptance of responsibility.

Mr. Lee would request the Court to take note that this was a single count of possession of a handgun by a felon, in which the nature of the factual basis for the stop to be one created by chance, not by a lengthy investigation into Mr. Lee. The relevant facts include that Mr. Lee was a passenger in the vehicle which was stopped by an LMPD officer for having expired registration plates. Though they believed a search was proper pursuant to probable cause, Mr. Lee freely advised officers before they could even begin that there was a handgun in the vehicle and directed them to its location. He also claimed ownership of the handgun and answered all questions posed by detectives. Mr. Lee advised officers that he received the gun from his brother for protection after the recent killing of Mr. Lee's fifteen (15) year old nephew. Further, no drugs or cash were found in the vehicle or on Mr. Lee's person. He only ceased cooperation when officers requested to search his phone without a warrant.

As such, Mr. Lee believes that he is a prime candidate under this section for a downward variance, as the nature and circumstances of his case show that (1) the firearm was not used for a crime of violence or to traffic narcotics, (2) that he was compliant and respectful to officers, and (3) that his, though wrongful, possession of the firearm was out of fear from the ever-growing wave of violence that has plague this city in recent years. Mr. Lee acknowledges that, despite the violent crime rate in this city, he must not rely on carrying a firearm for protection in the future.

**b. 18 U.S.C. §3553(a)(2)A): THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT FOR THE LAW, AND TO PROVIDE JUST PUNISHMENT FOR THE OFFENSE**

      i. REFLECT THE SERIOUSNESS OF THE OFFENSE

The language of this section of the Court's examination embodies a cardinal principle of the criminal punishment infrastructure: the proportionality between the offense seriousness and the sentence imposed. In grading the seriousness of the offenses, the criminal law customarily considers two general factors: the harm caused by the offense and the individual's blameworthiness. Joshua Dressler, Understanding Criminal Law, p112-113, 140 (7th Ed. 2015). Imposing lengthier sentences to achieve objectives such as retribution, denunciation, or specific or general deterrence are generally thought to be permissible only with respect to conduct for which the defendant is blameworthy. The primary factor in ranking individual blameworthiness is a defendant's state of mind. *See* Singh, 877 F.3d at 120 ("[A] defendant's motivation for engaging in criminal conduct is unquestionably a proper consideration at sentencing.").

Here, Mr. Lee's conduct did not cause harm to any identifiable victim, as reflected in his PSR. It should also be noted that no real discernable and definable harm was caused to any individual or institution that would substantiate a finding of a great "harm" being caused by possessing a firearm. As to his blameworthiness, Mr. Lee also urges the Court to consider his state of mind in committing this offense. Mr. Lee was not motivated to possess a handgun for the furtherance of a crime/violent act, but rather as protection from death threats received after the murder of his nephew. Though he acknowledges that he is to blame for his own actions, he prays this Court consider why he chose to knowingly make this decision to violate the law, which was not to cause harm, but hopefully to prevent harm being done to him.

      ii. PROMOTE RESPECT FOR THE LAW AND TO PROVIDE JUST PUNISHMENT

The laws punishing criminal conduct were designed to protect the public interest in punishing the violator and promoting respect for the laws. Therefore recognition by the public that a sentence for gun crimes will be commensurate with the gravity of the offense should act as a deterrent to would-be violators. Here, the gravity of Mr. Lee's gun crime is significantly less than many other offenders, in that there are no allegations that Mr. Lee was using this weapon to cause harm in the community, but rather only that he was possessing it. As such, Mr. Lee's would assert that his Guideline range punishment would be far from just and would assert that a sentence under a downward variance would still serve to promote respect for the law to offenders who engage in similar conduct.

    **c. <u>18 U.S.C. §3553(a)(2)(B),(C): THE NEED FOR THE SENTENCE IMPOSED TO AFFORD ADEQUATE DETERRENCE TO CRIMINAL CONDUCT AND THE NEED FOR THE SENTENCE IMPOSED TO PROTECT THE PUBLIC FROM FURTHER CRIMES OF THE DEFENDANT</u>**

For many of the same reasons already discussed, Mr. Lee argues that a lengthy prison term is not necessary to afford adequate deterrence to criminal conduct or protect the public from further crimes of the defendant. Many courts have held that section 3553(a)(2) would warrant a downward variance where it was determined that the defendant could be deterred from future crimes through means other than imprisonment. Mr. Lee would argue that he falls within that category. See <u>United States v. Grossman</u>, 513 F.3d 592, 597 (6th Cir. 2008) (downward variance was proper where counseling, treatment, and supervised release reduced the likelihood of recidivism).

Mr. Lee believes that he has not truly confronted most of the demons of his past, and that they likely played a role in his negative peer associations and past criminal activity. As such, Mr. Lee believes that mental health treatment would benefit him far more than a lengthy sentence and

13

would reduce his risk for recidivism and protect the public. Researchers at the University of Edinburgh have found that mental health treatment, particularly for poverty-related trauma, can help reduce involvement in criminality as well. A report from the Edinburgh Study of Youth Transitions and Crime looks at two (2) decades worth of research on the subject. "Our research suggests that justice system intervention can only be effective in preventing offending and conviction if it works in parallel with other policy responses, such as increasing educational attainment, reducing child poverty, improving adolescent health and well-being, and dealing effectively with child maltreatment," stated Professor and Co-Director of the study, Susan McVie of Edinburgh Law School. Additionally, Robert Street, Director of Justice at the Nuffield Foundation, which funded the study, added "for over two decades the Edinburgh Study has provided policymakers and practitioners with valuable source of information about the drivers and consequences of youth offending. This latest report provides further vital insight into the lasting effects of adversity experienced in both childhood and early adulthood and highlights the need for a joined-up approach to reducing offending." https://www.nuffieldfoundation.org/news/children-exposed-to-poverty-and-trauma-more-likely-to-offend-as-adults.

      Mr. Lee would also assert that he has already endured a period of incarceration that has helped to create a deterrent and served to protect the public. Pursuant to available records, Mr. Lee spent one hundred one (101) days (Jan 23, 2023 - May 3, 2023) being monitored by GPS systems under the supervision of Jefferson County's Home Incarceration program. As the Bureau of Prisons ("BOP") in unlikely to award him custody credit under 18 U.S.C. § 3585 for this time, Mr. Lee would urge this Court to see that, though it likely does not fit the BOP's narrow language that defines "detention", that it was not time that did not serve to create a deterrence in criminal

14

conduct. As such he would request that this Court instead take that time into consideration and grant him a variance that reflects the amount of time he spent under that form of detention.

    d. **18 U.S.C. §3553(a)(2)(D): THE NEED FOR THE SENTENCE IMPOSED TO PROVIDE THE DEFENDANT WITH NEEDED EDUCATIONAL OR VOCATIONAL TRAINING, MEDICAL CARE, OR OTHER CORRECTIONAL TREATMENT IN THE MOST EFFECTIVE MANNER**

A lengthy prison term is not necessary to provide these types of resources to a defendant like Mr. Lee and support his claim that a downward variance would be appropriate. As Mr. Lee does not have a significant history of substance abuse, remaining in custody for a lengthy amount of time in order to complete a treatment program will not benefit or rehabilitate Mr. Lee. He also already has plans for employment upon release, making vocational training another benefit to incarceration that would not serve to assist Mr. Lee in his rehabilitation efforts. Mr. Lee argues that instead, a longer period of supervision would be much more beneficial than a lengthy sentence, as he could be evaluated by a probation officer and be enrolled in any type of programming that Probation finds integral to his integration back into society. He would ask this Court to consider a below Guideline range sentence with a longer period of supervised release.

    e. **18 U.S.C. §3553(a)(3)): THE KINDS OF SENTENCES AVAILABLE**

Mr. Lee's Guideline range falls within Zone D of the Sentencing Table, making him ineligible for probation or split sentencing. This however would not preclude this Court from imposing such a sentence, as any sentence of probation or any split sentence would be available to a defendant like Mr. Lee if the Court grants his requests for a downward departure and variance and imposes a sentence within a range that would permit said types of sentences. While such a variance is not common, some Courts have found that the §3553(a) factors may be compelling enough for such a ruling. See United States v. Fuson 215 F. App'x 468 (6th Cir. 2007) (Sixth Circuit upheld a sentence where the District Court determined that the defendant's Criminal

15

History Category was overstated and granted a variance reducing the defendant's Offense Level by eight levels and sentenced Fuson to five years of probation, with the first six months to be served through home detention and fined him $2000.). Mr. Lee prays that an evaluation under the §3553(a) factors would induce this Court to consider whether he is entitled to a sentence reduction that would permit a split sentence. If given such a privilege, Mr. Lee would faithfully abide by any terms and conditions of a split sentence, including home detention, a long probationary period, or the payment of a fine, in exchange for a short period of incarceration.

## CONCLUSION

Mr. Lee has plead guilty and readily accepts whatever sentence this Court may give him; however, he also urges this Court to find that his sentence range calculated pursuant to the Guidelines however is not sufficient, but in fact, is greater than necessary to adequately address his guilt. Taken together, the history and characteristics of the defendant, the nature and circumstances of the offense, and the sentencing factors described in Section 3553(a) all support a sentence below the Guideline range. The defense thus respectfully urges the Court to impose such a sentence that is sufficient, but not greater than necessary, to serve the interests of justice and the factors set forth in 18 U.S.C. 3553(a).

Respectfully submitted,

 /s/ Ashlea N. Hellmann
Ashlea N. Hellmann
FERNANDEZ & MOLONEY PLLC
401 West Main Street, Suite 1807
Louisville, Kentucky 40202
(502) 589-1001
ahellmann@fhmlegal.com
*Counsel for Defendant Lee*

## **CERTIFICATION**

I do hereby certify that I filed the foregoing motion with the Clerk of Court on the 27th day of January 2024, using the CM/ECF system which will send electronic notice of same to all other counsel of record.

_/s/ Ashlea N. Hellmann_
Ashlea N. Hellmann
